RUFUS EDMONDSON and JOHN K. SMITH v. WILEY B. FORT.

Where a jury, in response to certain issues submitted to them, find that "there was a contract by the plaintiffs to sell the mill to the defendant at the price of $779.42, and a time and place for completing said contract was designated by the parties": *Held*, that the proper construction of this finding is, that the contract was incomplete, and that the time and place was fixed upon to close the trade and agree upon what was then left open, in order to fix the terms of the contract; and that either party, until the day so designated, might either close the trade or abandon it, just as they had a mind to do.

In such case, if the jury had found that the contract was executed, and that there was nothing else to do but to receive the price and deliver the property, the measure of damages would be merely nominal, and not the full sum agreed to be paid as the price of the mill. Plaintiffs still owning the property, the plaintiffs could recover damages from the breach of contract in not paying for, and accepting the delivery of the same.

(The case of *Willard* v. *Perkins*, Busb. 253, cited, distinguished from this, and approved; *Waldo* v. *Belcher*, 4 Ired., 609; *Ashe* v. *Derossett*, 5 Jones, 297, cited and approved.)

This was a CIVIL ACTION for the recovery of the price of a steam saw mill, according to contract, tried before his Honor Judge KERR, at Spring Term, 1876, of WAYNE Superior Court.

On the trial in the Court below, the following issues were submitted to the jury, whose findings thereon embrace all the facts necessary to be stated for understanding the points raised and decided in this Court.

1st. Did the plaintiff sell and deliver to the defendant, or to the defendant and one Thos. Yelverton, on or about the first day of September, 1871, a steam saw mill and fixtures, at the price of $779.40?

*Answer.* The plaintiffs did not sell and deliver to the defendant, nor to the defendant and Thos. Yelverton, the saw mill mentioned in the pleadings.

2d. Did said plaintiffs, on or about said 1st day of September, contract to sell to said defendant, or to said defendant and said Yelverton, a steam saw mill and fixtures, at the price of $779.40, and fix a time and place for completing said contract by writing, and delivering said mill ?

*Answer.* Said plaintiffs did on or about the 1st day of September, 1871, contract to sell to said defendant and one Thos. Yelverton, one steam saw mill and fixtures, at the price of $779.40; and that a time and place for completing said contract were designated by the parties.

3d. Were the plaintiffs ready, and able and willing, at the time and place designated, to perform their part of the contract?

*Answer.* The plaintiffs were ready, able and willing, at the time and place designated to perform their part of the contract.

4th. Did the defendant or said Yelverton attend at the time and place designated for completing said contract ?

*Answer.* Neither the defendant nor Yelverton attended at the time and place designated for completing said contract.

5th. Was said mill destroyed by fire after the time so designated for executing said contract ?

*Answer.* Said mill was destroyed by fire after the time so designated for executing said contract.

6th. What damage has the plaintiffs sustained by the breach of the contract ?

*Answer.* The jury assess plaintiffs' damage sustained by breach of said contract at $779.42, with interest from October 1st, 1871.

Upon the foregoing verdict the Court rendered judgment in favor of the plaintiff for the said sum of $779.42, with interest from said October 1st, 1871, until paid, and for costs. From this judgment the defendant appealed.

*Isler*, for appellant.
*Smith, Strong & Smedes*, contra.

PEARSON, C. J. In reviewing the decision of his Honor, we are confined to the finding of the jury on the issues submitted to them, and are to assume that the jury acted under proper instructions, no exceptions being taken thereto. .

The jury find that " the steam saw mill " was not " sold and delivered " by the plaintiff to defendant; in other words, there was no executed contract and no delivery, either actual or constructive, by which the ownership of the mill passed to defendant. But they find that " there was a contract by the plaintiffs to sell the mill to defendant at the price of $779.42 *and a time and place* for *completing* said contract was designated by the parties."

The case turns upon the construction of this finding. Does it mean the parties came to a positive and definite agreement, and " the bargain was struck," which we are told by Blackstone was in old time signified by shaking hands, a deed or solemn act about which there could be no mistake, which relieved the matter from all doubt; so that a time and place was designated for the mere purpose of carrying the bargain into effect; or does it mean by the word *completing* the contract, the parties chaffered about the sale of the mill for $779.42; in other words, talked about making a trade and fixed a time and place for meeting in order to complete, that is, close the trade?

If the former was the meaning, then the apt and proper finding would have been, the parties designated a time and place for meeting in order *to execute the contract*, and his Honor would have had the verdict so expressed, but the finding is, a time and place was designated for the parties to meet and *complete the contract*, that is, to close the trade, and agree upon what was then left open, in order to fix the terms of the contract. If the latter is the true construction,

and we think it is, then both of the parties had *locus peniten-
tiæ* until the day fixed upon, and might elect either to close
the trade or to abandon it.

In this view of the matter it is clear that, had the defend-
ant attended at the time and place designated, and an-
nounced his election not to close the trade—that *is,* not to
complete the contract—the plaintiffs would have had no
cause of action, and no cause to complain, except that the
defendant ought to have saved them the trouble of coming
to the place designated by giving them notice beforehand
of his election not to complete the contract.

The fact that the defendant did not attend at the time and
place designated, was just as distinct notice of his election to
abandon the incomplete contract as if he had kept his ap-
pointment and made such announcement, and only exposed
him to the charge of not being a man of his word and a
want of punctuality ; but it was no breach of contract, for,
as we have seen, the contemplated contract had not been
completed, and the ownership of the property was still in
the plaintiffs, and the risk of loss by fire or otherwise
was on them.

In *Willard* v. *Perkins,* Busb. Rep., 253, " the bargain was
struck," the contract was completed, " the price was paid
down," and the loss is put on the vendee, because he was in
default in not taking away the rosin in the time agreed on,
which distinguishes it from *Waldo* v. *Belcher,* 11 Ired., 609,
where the purchaser of the corn was in no default for not
taking it away before it was burnt.

In the view we have taken of the case, there is error. The
judgment will be reversed, and judgment entered for defen-
dant, on the finding of the jury, that he go without day and
recover his costs.

In the other view of the case, and supposing the finding
to mean that " the bargain was struck," the contract of sale
was complete, and the defendant, as a part of the contract,

agreed to attend at the time and place designated, pay the price—or make satisfactory arrangements in respect thereto —and accept delivery of the property.

There is error in respect to the measure of damages, and the plaintiffs would only be entitled to nominal damages, and not to the full sum agreed to be paid as the price of the property.

By the finding of the jury, the property was " not sold and delivered," and the ownership remained in the plaintiffs. He certainly could not keep the property and recover its price also—that would be rather strong.

At law he recovered damages for breach of contract in not paying for and accepting delivery of the property, which, of course, would be nominal, as he still owned the property. In equity, he could ask for a specific performance of the executory contract, by offering to convey the property on being paid the price. So it is manifest that this action never would have been brought but for the accident that the property was burnt up.

At law, as the ownership was in plaintiff, the loss by the destruction of the property was on him, unless the defendant had taken on himself the risk of a loss by fire for all time to come by violating his agreement to attend, pay the price, and accept delivery at the time and place.

This proposition is so absurd that it cannot be entertained for a moment. It did not concern the liability of the defendant whether the property was burnt in a month or a year, or at any time within the statute of limitations, after the defendant failed to attend at the time and place. So the plaintiffs could go on and use the property at the risk of the defendant for three years.

The case comes within the principle held in *Ashe* v. *Derossett,* 5 Jones, 297. The loss by fire was not in the con-

templation of the parties, and the damage was not proximate, but too remote.

Error.

PER CURIAM. Judgment reversed, and judgment for defendant.