MARVIN WADE AND THE GENERAL UTILITY COMPANY v. RALPH LUTTERLOH.

(Filed 3 October, 1928.)

**1. Appeal and Error—Review—Findings of Fact.**

When the findings of fact by the referee are supported by any competent evidence, and are approved by the trial judge, they are not reviewable on appeal.

**2. Contracts—Actions for Breach—Necessity of Performance, Tender or Readiness to Perform.**

A purchaser of capital stock of a corporation upon the condition that he would take a certain proportionate amount of a fixed total, the seller the same number of shares, and that a disinterested third person would take the remaining two shares, the corporation thus to consist of the three persons, the transaction to be closed at a fixed date, the purchaser to give in payment his notes secured by a mortgage on his real estate upon terms to be agreed upon: *Held,* the seller in making demand upon him to take the shares must do so according to the terms of the agreement, within the time specified, and when he has not done so, he may not recover damages for the failure of the purchaser to purchase the stock.

**3. Same.**

A party to a contract to enforce it must prove performance of his antecedent obligations arising thereunder or some legal excuse for nonperformance, and if the stipulations are concurrent, his readiness and ability to perform them.

**4. Contracts—Construction and Operation of Conditions.**

The rule that covenants in a contract are ordinarily regarded as concurrent is one of interpretation and not of substantive law, and gives way to the intent of the parties as gathered from the construction of the whole instrument as to whether a condition is precedent, concurrent, or subsequent.

**5. Contracts—Requisites and Validity—Nature and Essentials in General.**

A contract to enter into a future contract must specify all of its material and essential terms, and leave none to be agreed upon as a result of future negotiations.

**6. Contracts—Construction and Operation of Conditions.**

Where the contract leaves indefinite the performance of one of the covenants of a party, the law implies a reasonable time under the surrounding facts and circumstances.

APPEAL by plaintiff, Marvin Wade, from *Nunn, J.*, at April Term, 1928, of HARNETT. Affirmed.

This is a civil action instituted by Marvin Wade and the General Utility Company, a corporation, against the defendant to recover damages, alleged to be due on account of breach of contract. At November Term, 1926, the General Utility Company took a voluntary nonsuit and the action as between Marvin Wade, as plaintiff, and Ralph Lutterloh, as defendant, was referred by consent to Norman C. Shepard, Esq., referee. Marvin Wade's cause of action is bottomed on a written contract made between himself and defendant on 5 December, 1924.

The contract in substance—Marvin Wade agrees and binds himself to secure and deliver to Ralph Lutterloh 249 shares of the par value of $100 of the capital stock of the General Utility Company, a corporation, with capital stock of $50,000 upon the payment to him by Ralph Lutterloh of the sum of $27,500; $22,500 of that sum to be paid into the treasury of the General Utility Company to be used in the business of the company. Ralph Lutterloh agrees to take and pay for said 249 shares of said stock according to the terms above outlined, and that upon the delivery of the stock to him that "he will execute his note in the sum of $27,500, due and payable at such time as shall be agreed upon and shall secure the same in a manner satisfactory to the said Marvin Wade, it being agreed that he will secure same with mortgages on said real estate located in the city of Fayetteville.

It is understood and agreed by the parties hereto that the transactions and arrangements herein provided for shall be fully closed up and the note and security shall be executed and given by said Ralph Lutterloh and the capital stock shall be delivered to him by said Marvin Wade on or before 25 December, 1924.

The capital stock of the said General Utility Company is at present $45,000, but it is the understanding and agreement that said capital stock is to be increased to $50,000, and Ralph Lutterloh is to hold 249 shares, Marvin Wade is to hold 249 shares, and two shares is to be held by some third person to be agreed upon by the said Ralph Lutterloh and Marvin Wade."

The referee found the following facts:

"3. That at the time of the execution of the said contract the capital stock of the General Utility Company consisted of 450 shares with a par value of $100, held as follows:

Marvin Wade, plaintiff ........................................150 shares.
B. O. Townsend ...............................................150 shares.
G. M. Tilghman ..............................................150 shares.

4. That after the execution of said contract and some time prior to 25 December, 1924, the plaintiff, Marvin Wade, purchased from B. O. Townsend the 150 shares held by him at $36 per share, for $5,400.

5. That shortly thereafter, and prior to 25 December, 1924, the plaintiff notified the defendant that he had the stock and was ready to deliver it to him, at which time the plaintiff held 300 shares of the capital stock of the company.

6. That the defendant at that time informed the plaintiff that his estate had not been settled and that he did not have the money.

7. That there was no further conversation or dealing between the plaintiff and the defendant with respect to the performance of said contract until some time in January or February, 1925, a month or more after the date of performance provided in the contract.

8. That the plaintiff made no tender to the defendant in compliance with his part of the contract and made no demand upon the defendant that he execute a note for the purchase of the stock as provided in the contract.

9. That the outstanding indebtedness of the General Utility Company, at the time of the execution of the contract, and the purchase of the 150 additional shares of stock by plaintiff from B. O. Townsend, in the way of guaranteed preferred stock was $20,000, and is now $12,500."

The referee's conclusions of law:

"(c) That the plaintiff is not entitled to recover for breach of the contract from the foregoing findings, having failed to tender the stock and demand the execution of note secured by mortgage on or before 25 December, as provided in said contract.

(d) That the mere failure of the defendant to comply with the provisions of the contract does not warrant a recovery by the plaintiff.

(e) That even though the plaintiff were entitled otherwise to recover from the defendant, there is no evidence from which the referee can find plaintiff's damages.

Wherefore, your referee recommends that the plaintiff recover nothing of the defendant in this action and that the defendant recover its costs as taxed by the clerk."

The plaintiff filed certain exceptions to the referee's report. They are set forth in the hearing in the court below as follows: "His Honor de-

clined to sustain plaintiff's first exception to the report of the referee as follows: 'The plaintiff excepts to finding of fact No. 8, in that the same is inconsistent with findings of fact Nos. 5 and 6, and in that the same is a legal inference and should be excluded as a finding of fact.' "

That his Honor was requested as set forth in plaintiff's second exception to the report of the referee to find as a fact "that in addition to the facts set forth in finding of fact No. 7, the court should have found as a fact that the defendant in January or February, 1925, advised the plaintiff that he was not satisfied with his contract and that he wanted to be relieved from it on account of his wife's unwillingness to live in the town of Dunn."

His Honor declined to sustain plaintiff's third exception to the referee's report and to conclude as a matter of law "that the plaintiff is entitled to recover for breach of contract from the findings of fact, the plaintiff having tendered the stock demanded by the contract and having demanded compliance on the part of the defendant with said contract prior to 25 December, 1925, or that the defendant thereupon waived such tender."

That the court erred in not sustaining the plaintiff's fourth exception to the referee's report and concluding as a matter of law "that the defendant under the circumstances and facts found was liable to the plaintiff in damages on account of the breach of the contract."

The court below rendered the following judgment: "It is adjudged and ordered that said report be, and it is hereby, approved and confirmed, except that it is modified by the additional conclusion of law:

(f) That plaintiff is not entitled to recover damages of the defendant.

Judgment is hereby rendered accordingly, and it is adjudged that plaintiff take nothing, and that defendant go without day and recover his cost of plaintiff, to be taxed by the clerk."

The plaintiff duly excepted and assigned errors to the court below declining to sustain plaintiffs' numerous exceptions and the judgment rendered, and appealed to the Supreme Court.

The plaintiff, Marvin Wade's, testimony was the sole evidence before the referee.

*J. C. Clifford for plaintiff.*
*Dye & Clark for defendant.*

CLARKSON, J. "It is settled by all the decisions on the subject, with none to the contrary, that the findings of fact, made by a referee and approved by the trial judge, are not subject to review on appeal, if they are supported by any competent evidence. *Dorsey v. Mining Co.,* 177 N. C., 60." *Kenney v. Hotel Co.,* 194 N. C., at p. 45.

"While the courts now assume that covenants are dependent rather than independent, and concurrent on the one hand rather than precedent and subsequent on the other, this rule, like the other rules of modern law on this subject, is merely a guide to aid the court in ascertaining the intention of the parties; and it is not a rigid rule of substantive law. Whether covenants are dependent or independent, and whether they are concurrent on the one hand or precedent and subsequent on the other, depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties." Page on The Law of Contracts, Vol. 5 (2 ed.), sec. 2948. *Stalesville Flour Mills Co. v. Wayne Distributing Co.,* 171 N. C., 708. *Smith v. Smith,* 190 N. C., 764. See *N. C. Highway Commission v. Rand,* 195 N. C., 799.

"While a contract is still executory on both sides, the renunciation of it by one of the parties thereto before the time for performance has arrived, has or may have, important legal consequences. What these consequences are is a question upon some branches of which the courts are practically unanimous; while upon other branches they are by no means as unanimous as the outward form of some of the statements of the law would lead us to believe.

"Renunciation by one party excuses the other from any further offer to perform, so that the failure of such other party to perform or to tender performance does not give to the party who was originally in default the right to treat the contract as discharged because of such nonperformance; and such failure does not show that the party who was originally not in default and who has omitted to perform further, or to tender performance, has consented to treat such contract as discharged so as to prevent him from enforcing it thereafter, at least by an action for damages or some similar appropriate remedy." Page on The Law of Contracts, Vol. 5, sec. 2882.

*Gaylord v. McCoy,* 161 N. C., 685; *Headman v. Commissioners,* 177 N. C., 261; *Rogers v. Piland,* 178 N. C., 70; *Cunningham v. Long,* 186 N. C., 526; *Samonds v. Cloninger,* 189 N. C., 610; *Bryant v. Lumber Co.,* 192 N. C., 607.

"A contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as a result of future negotiations." Elliott on Contracts, part sec. 175. *Edmonson v. Fort,* 75 N. C., 404; *Elks v. Ins. Co.,* 159 N. C., 627.

In *Edgerton v. Taylor,* 184 N. C., at p. 578 it is said:

"One party to a contract cannot maintain an action for its breach without averring and proving a performance of his own antecedent obli-

gations arising on the contract, or some legal excuse for a nonperformance thereof, or, if the stipulations are concurrent, his readiness and ability to perform them. *Ducker v. Cochrane,* 92 N. C., 597, cited and approved in *McCurry v. Purgason,* 170 N. C., 468; *Tussey v. Owen,* 139 N. C., 457"; *Colt v. Kimball,* 190 N. C., at p. 174; *Bryant v. Lumber Co.,* 192 N. C., 607; *Seed Co. v. Jennette Bros.,* 195 N. C., 173.

We give the general principles of law bearing on the facts in the present action. Let us analyze the contract as a whole—several material matters were left open: (1) No time is specified for the payment by defendant of the $27,500 note. What is a reasonable time? See *Colt v. Kimball,* 190 N. C., at p. 174. The security is indefinite and uncertain. (2) *The person* who was to hold the two shares of stock would hold the balance of power between the plaintiff and defendant. His vote would be sufficient to carry or defeat any proposition. The three are to compose all the stockholders. (3) The agreement was to sell 249 shares of stock with capital stock of $50,000, whereas the stock actually issued was $45,000, and the agreement was to increase it to $50,000.

The *transactions and arrangements* set forth in the contract *"shall be fully closed up"* . . . *"on or before 25 December, 1924."* At the time plaintiff notified defendant, which was before 25 December, 1924, that he had the 249 shares of stock and was ready to deliver it to him, other essential matters were in *fieri*—incomplete. Plaintiff at the time had only 300 shares. If defendant had taken same when tendered plaintiff would have had only one share. The G. M. Tilghman share, plaintiff testified, was available and "could have gotten the 150 shares from Mr. Tilghman any time I called for it by relieving him of his endorsement for the General Utility Company." On 25 December the endorsement amounted to about $20,000. This had to be paid by plaintiff. The contract with defendant was to make a note for the $27,500, with security—$22,500 of that uncertain security had to be realized on and used in the business of the company. Construing the contract as a whole—considering its purpose, the method of control of the stock between the parties—the essential matters in *fieri*—we cannot hold that plaintiff was ready and able to perform his part of the contract. We do not think there is any evidence of renunciation on the part of defendant before the time limit for the performance of contract had arrived.

Taking in consideration the entire contract, its incompleteness in certain particulars, how the corporation should be controlled, the nature and purpose of the contract, we see no error in the judgment of the court below. We think under the facts and circumstances of the case there was sufficient evidence to support the findings of fact. There is no error in law. The judgment of the court below is

Affirmed.