WILFORD M. SMITH v. HOUSE OF KENTON CORPORATION

No. 7426SC652

(Filed 6 November 1974)

1. Contracts § 3— future contract — setting out all terms
    An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations.

2. Contracts § 3; Landlord and Tenant § 2— agreement to execute lease — payment of rent provision
    An agreement to execute a lease relied upon by plaintiff was not binding on defendant since the agreement failed to provide for the time and manner of payment of rent.

3. Contracts § 3; Landlord and Tenant § 2— agreement to execute lease — provisions of formal lease different
    Even if plaintiff's letter to defendant was sufficient to constitute a binding contract to execute a lease, plaintiff is not entitled to recover

---

**Smith v. House of Kenton Corp.**

---

in this breach of contract action since the formal lease submitted by plaintiff contained provisions with respect to payment of rent, subletting of premises, maintenance, and insurance which were not mentioned in the letter.

APPEAL by defendant from *Thornburg, Judge,* 18 February 1974 Non-Jury Session of Superior Court held in MECKLENBURG County.

This is an action for damages for breach of contract. The parties waived jury trial and the evidence tended to show:

On and before 9 May 1970, plaintiff owned certain real property located at 1601 Montford Drive in the City of Charlotte. The property was equipped for use as a beauty salon and at that time defendant operated a beauty salon at another location in Charlotte. On that date, plaintiff employed Davant Realty Company [Davant] to find a tenant to lease the real estate and purchase certain equipment located thereon. Thereafter, Davant had several conversations with Mrs. Shelton, president of defendant, and Mrs. McCormac, an employee of defendant, with respect to defendant leasing the premises and purchasing the equipment. Following those conversations, Davant wrote and sent to Mrs. Shelton the following letter:

"July 15, 1970

Mrs. W. H. Shelton
416 North Spruce Street
Winston-Salem, North Carolina 27101

Dear Mrs. Shelton:

This will confirm my conversation with Mrs. McCormac that your firm agrees to lease space at 1601 Montford Drive, Charlotte, North Carolina, on the following terms and conditions:

1. Lease terms—Five (5) years, to begin on September 1, 1970 or as soon as the air conditioning can be repaired.

2. Rental rate—$400.00 per month. Lessee will pay all utilities (The Rathskeller has a sub-meter and Davant Realty, Inc., will collect water bills from this tenant.

3. The equipment purchase—$7,000.00—Cash.

4. Maintenance—Lessor will maintain exterior walls and roof. Lessee will maintain the interior.

A lease is being drawn and will be forwarded to you soon. Please execute the copy of this letter as your agreement to these terms and conditions and return to us so we can take the space off the market and hold same for you.

> Sincerely yours,
> s/ Eugene M. Davant"

On 16 July 1970, Mrs. Shelton signed an acceptance on the bottom of the letter and returned it to Davant. On 31 July 1970, Davant wrote and sent Mrs. Shelton a second letter containing the following:

"Enclosed is original and one copy of Lease Agreement as prepared by Dr. Smith's attorney, based on your letter of intent, to lease the above mentioned beauty salon. Please look over said lease and if terms are satisfactory, execute and return original to me together with a check for two months rent at $400.00 per month and $7,000.00 for the equipment (see inventory list attached), a total of $7,800.00. Upon receipt of said check the replacement of compressor on air conditioner will be ordered and installation begun as soon as possible. We expect to have the space ready by September 1, 1970 or sooner."

During the month of August 1970, several conversations were had between Mrs. Shelton, Davant and plaintiff and several letters were written and sent by Davant to Mrs. Shelton.

On 3 September 1970, defendant's attorneys wrote and sent Davant a letter containing the following:

"Mrs. W. H. Shelton, President of House of Kenton Corp., requested that we write to you to confirm her telephone conversation with you recently with reference to the premises and beauty salon located at 1601 Montford Drive, Charlotte, North Carolina.

This letter will confirm that, in view of the substantive differences between the initial arrangement intended (as set forth in the letter of July 15, 1970, from you to Mrs. Shelton) and the arrangement outlined in your letter of July 31, 1970, to Mrs. Shelton and the enclosed bill of sale and lease agreement, you and Mrs. Shelton have agreed not to proceed with the transaction."

Thereafter, plaintiff proceeded to try to lease the premises to other parties and did so on 1 October 1973 for a monthly

rental of $500. Defendant never took possession of the premises and plaintiff received no rent from 1 September 1970 through 30 September 1973.

At trial plaintiff elected not to pursue his claim for breach of contract to purchase the equipment for the reason that he had sold the equipment for $7,000. The court entered judgment setting forth findings of fact and conclusions of law and adjudging that plaintiff recover $15,046.03, representing 37 months' rent totaling $14,800, and advertising expense in amount of $246.03 incurred by plaintiff in attempting to find another tenant. Defendant appealed.

*Welling and Miller, by Alfred F. Welling, Jr., for the plaintiff appellee.*

*Moore and Van Allen, by Barney Stewart III, for the defendant appellant.*

BRITT, Judge.

The theory of plaintiff's action is that the defendant breached a contract to execute a lease. That the judgment was predicated on that theory is indicated by the following conclusion of law:

"3. That the written offer of the plaintiff dated July 15, 1970, when accepted by the defendant corporation on July 16, 1970, became a contract to execute a lease and as such is enforceable to the same extent as if the parties had entered into a written lease agreement containing the terms of the said contract to execute a lease."

The question then arises, was the letter dated 15 July 1970 sufficient to constitute a binding contract to execute a lease? We answer in the negative.

Our research fails to disclose any precedent in this jurisdiction which is directly in point; however, we find in opinions of our Supreme Court numerous statements of principles which we think are applicable to the case at bar.

[1] In *Young v. Sweet,* 266 N.C. 623, 625, 146 S.E. 2d 669 (1966), we find: "An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations. *Thompson-McLean, Inc. v. Campbell,* 261 N.C. 310,

Smith v. House of Kenton Corp.

314, 134 S.E. 2d 671; *Wade v. Lutterloh,* 196 N.C. 116, 120, 144 S.E. 694; *Croom v. Lumber Co.,* 182 N.C. 217, 220, 108 S.E. 735; *Edmondson v. Fort,* 75 N.C. 404." Accord, *Boyce v. McMahan,* 22 N.C. App. 254, 206 S.E. 2d 496 (1974), *aff'd,* No. 50 (N.C., filed 10 October 1974).

In *Dodds v. Trust Co.,* 205 N.C. 153, 156, 170 S.E. 652 (1933), the court said:

> "In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. *Gravel Co. v. Casualty Co.,* 191 N.C., [sic] 313; *Rucker v. Sanders,* 182 N.C., [sic] 609. Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, *idem re et sensu,* and their minds must meet as to all the terms. *Croom v. Lumber Co.,* 182 N.C., [sic] 217."

Quoted with approval in *Yeager v. Dobbins,* 252 N.C. 824, 828, 114 S.E. 2d 820 (1960).

In 3 G. Thompson, Real Property § 1063, at 238 (J. Grimes repl. 1959) [hereinafter *Thompson*], we find: "In order to constitute a binding agreement to execute a lease, such agreement must be certain as to the terms of the future lease. A few points of mutual agreement are essential to a valid agreement to lease: First, the minds of the parties must have met as to the property to be included in the lease; second, the terms of the lease should be agreed upon; third, the parties should agree upon the rental; and fourth, *the time and manner of payment of rent should be stated. . . .* " (Emphasis added.)

[2]  In the case at bar, the agreement relied on by plaintiff did not specify all of the essential and material terms of the lease to be executed and left much to be agreed upon by future negotiations. The offer was not complete and the minds of the parties did not meet as to all essential terms. The agreement failed to provide for one of the specifics referred to by *Thompson,* namely, the time and manner of payment of rent. The necessity for this provision with respect to rent is obvious. Whether the rent was payable monthly, quarterly, semiannually, annually, or all at one time, and whether it was payable in advance, at the end of a period or otherwise, presented a major question that finds no answer in the agreement. It might be argued that the provision of "$400.00 per month" sufficiently implied that a monthly

payment of rent was contemplated by the parties. The question then arises, was the rent payable in advance, in the middle of the month, or at the end of the month? A clear indication that the minds of the parties did not meet on this question is the provision in the formal lease proposed by plaintiff that defendant pay the first and last months' rent at the beginning of the five-year period.

[3] We think there is a further reason why plaintiff was not entitled to recover. Assuming, *arguendo,* that the 15 July 1970 letter was sufficient to constitute a binding contract to execute a lease, plaintiff failed to show that he tendered a lease conforming to the contract.

In 51C C.J.S. Landlord and Tenant § 200, at 516, we find: "In an action for damages brought by the proposed lessor, general rules as to the pleadings and evidence are applicable. Plaintiff has the burden of proving those facts which go to make up his cause of action, for example, that the lease tendered conformed to the contract, . . . "

In 51C C.J.S. Landlord and Tenant § 196(4), at 509, we find: "A proffered lease must comply with the terms of the agreement. If the agreement does not specify the covenants to be contained in the lease, or if it expressly provides therefor, the lease should contain only the usual covenants and provisions." We quote further from said section, at 510:

> "*Usual Covenants and Provisions*: If the agreement does not specify the covenants to be contained in the lease, it should contain only the usual covenants and provisions. . . . Thus a covenant by the lessee to insure has been held usual.

> "On the other hand, the following covenants have been held to be unusual: Covenants against assignments or underletting without the consent of the lessor; a covenant for the payment of rent in advance; . . . "

The formal lease submitted by plaintiff to defendant in the case at bar reveals a number of provisions not mentioned in the letter; we point out several of them. In addition to requiring payment of the last month's rent at the beginning of the term, it limits the lessee's right to sublet or assign without written consent of the lessor. It requires that lessee shall " . . . maintain and keep in good order and repair all heating, air conditioning,

electrical and plumbing equipment located in the demised premises. . . . " It further provides that lessee will purchase and maintain, at its expense, a public liability insurance policy in the amount of $50,000 coverage for any one accident and $100,000 for any one accident involving more than one person, which policy or policies of insurance will show as named assured the lessee and the lessor as their interests may appear.

For the reasons stated, the judgment appealed from is

Reversed.

Judges CAMPBELL and VAUGHN concur.