881 F.2d 1069
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John D. DAVIS, III, d/b/a Banner Elk Realty, Plaintiff-Appellee,
v.
Allen A. GREENBERG, and wife; Gloria G. Greenberg,
Defendants-Appellants.
 No. 88-1709.
 United States Court of Appeals, Fourth Circuit.
 Argued May 11, 1989.
Decided July 28, 1989.
 
 1
 Jeffrey H. Abrams (Abrams & Abrams, P.C. on brief) for appellants.
 
 
 2
 Marla Tugwell Adams (Van Winkle, Buck, Wall, Starnes and Davis, P.A. on brief) for appellee.
 
 
 3
 Before WIDENER and SPROUSE, Circuit Judges, and FRANKLIN T. DUPREE, Jr., Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 FRANKLIN T. DUPREE, Jr., District Judge:
 
 4
 In this diversity action for the recovery of a real estate broker's commission allegedly due plaintiff, John D. Davis, III, the defendants, Allen and Gloria Greenberg, appeal a jury verdict for plaintiff in the amount of $21,253.00, asserting as error the trial court's denial of their motion for judgment notwithstanding the verdict. In the alternative they seek reversal of the court's denial of their motion for leave to file a counterclaim and remand for a new trial. Davis asks that if we find the evidence does not support the verdict, that the case be remanded for a new trial with additional instructions. We affirm as to all issues.
 
 I.
 
 5
 The Greenbergs are owners of 35.72 acres of land in Watauga County, North Carolina. On June 9, 1986, Mr. Greenberg and Mr. Davis entered into an exclusive listing agreement in which Davis was granted the right to sell the property which was designated as "All of 35+ acres off Lee Gwaltney Road, Watauga County." The price of the property was set at $5,950 per acre "on terms of all cash to me [Greenberg] or upon such other terms and conditions as may be agreed upon. Terms of sale: Cash x Conventional __, FHA __, VA __, personal x." The agreement provided for a ten percent commission if the property was "sold or exchanged ... at any terms accepted by me" during the period of the listing or ninety days thereafter.
 
 
 6
 In October 1986, Davis showed the property to a John Williams of Backwater Associates. On October 18, Williams submitted a written offer for $148,750 or approximately $4,250 per acre. The Greenbergs did not respond and so Williams submitted a second written offer of $187,500 or approximately $5,357 per acre. The Greenbergs then submitted a counter offer of $192,500 including $100,000 in owner financing at ten percent interest but reserving from the sale 3.25 acres of the property. Testimony at trial indicated the excluded land was the most valuable piece of the property and was at the heart of the tract on top of a mountain.
 
 
 7
 Wiliams then presented a third offer for the entire property at $212,534 which equalled the listing agreement price of $5,950 per acre. The offer included $112,534 in owner financing at ten percent interest. The Greenbergs responded to this offer with an offer virtually identical to their previous one, again with the 3.25 acres excluded. Accompanying this offer was a letter to Davis in which they indicated they had always intended to exclude 3.25 acres from the property. Williams declined to accept anything less than the full amount of the property listed and as of the time of trial the property had not been sold. There was also evidence that Williams made an oral cash offer of the full price for the entire property.
 
 
 8
 At the close of all the evidence, the jury was asked to decide whether Davis had fully performed his obligations under the listing contract and "procured a buyer who made a written offer which was in accordance with the listing agreement between the plaintiff and the defendants." The jury answered this issue affirmatively and further found that the Greenbergs had breached the contract and that Mr. Greenberg was acting as an agent for Mrs. Greenberg in executing the listing agreement. Thus, the jury found that Davis was entitled to the entire ten percent commission and judgment accordingly was entered in plaintiff's favor for $21,253.
 
 II.
 
 9
 The Greenbergs argue the trial court erred in denying their post-trial motions because the listing agreement required a sale or exchange of the property rather than merely procuring a ready, willing and able purchaser. In any event, they contend the conditions of the listing agreement were not fulfilled by Davis in that there was no agreement as to the terms of financing.
 
 
 10
 Where an owner "agrees to sell land for a certain price, 'Terms: cash or contract,' the broker has authority to sell only upon terms and conditions to be agreed upon and which are satisfactory and acceptable to the landowner." Thompson-McLean, Inc. v. Campbell, 261 N.C. 310, 314, 134 S.E.2d 671, 675 (1964). It is also the general rule in North Carolina that a broker is entitled to a commission when he obtains a purchaser ready, willing and able to purchase the property on terms specified by the owner. Id. at 314, 134 S.E.2d at 674. P. Hetrick, Real Estate Law in North Carolina Sec. 130 at 141-42. Of course, since the relationship between seller and broker is established by contract, the payment of a commission may be based on some other condition such as the consummation of a sale. See Ross v. Perry, 281 N.C. 570, 189 S.E.2d 226 (1972); Jones v. Palace Realty Company, 226 N.C. 303, 37 S.E.2d 906 (1946). The terms of the contract here required a sale or exchange of the property and in the absence of evidence to the contrary these terms should be given their ordinary meaning. See Beasley-Kelso Associates, Inc. v. Tenney, 30 N.C.App. 708, 717-18, 228 S.E.2d 620, 624, disc. rev. denied, 291 N.C. 323, 230 S.E.2d 675 (1976) (based on trial evidence, court found that usual and customary meaning of the word "sell" in a brokerage contract is the bringing together of a buyer and seller resulting in a contract).
 
 
 11
 However, a listing contract may be partly oral and partly written. See Thompson-McLean, supra, 261 N.C. at 313, 134 S.E.2d at 674-75. Davis testified that Mr. Greenberg had agreed orally that he would be willing to accept a twenty-five or thirty percent down payment, with the balance to be financed over three to five years at an interest rate acceptable to him. The MLS listing for the property stated essentially the same, with a "variable" rate specified.
 
 
 12
 Even where the contract calls for the actual sale of the property, however, if the sale fails because of the default of the owner he may not avoid liability when the broker has produced a purchaser ready, willing and able to buy on the terms specified. Bonn v. Summers, 249 N.C. 357, 359, 106 S.E.2d 470, 471-72 (1959); Crowell v. Parker, 171 N.C. 392, 396, 88 S.E. 497, 498 (1916); see also Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384 (1945); Annot., 169 A.L.R. 605, 607. Therefore, the inquiry remains whether Davis obtained a purchaser ready, willing and able to purchase on terms called for by the contract and if the Greenbergs thereafter declined for other reasons to go through with the sale. The evidence amply supports the jury's affirmative answer to this inquiry.
 
 
 13
 As stated before, the final offer made by Williams to pay $212,534 for the property complied with the price of $5,950 per acre set forth in the listing agreement. Despite defendants' contention that they never agreed to finance more than $100,000 of the purchase price, the jury was free to credit plaintiff's testimony that in fact Mr. Greenberg had expressed his willingness to accept twenty-five percent of the sales price as a downpayment and finance the balance of approximately $160,000 which was far more than the $112,534 deferred payment contemplated by the Williams offer.
 
 
 14
 As to the interest rate of ten percent offered by Williams, this was the same rate proposed by the Greenbergs' in their counter offer, and so the jury was justified in finding that this rate of interest was acceptable to the sellers. Moreover, the Greenbergs never expressed any concern to the prospective purchaser, Williams, or the broker, Davis, over the terms of the financing.
 
 
 15
 The court is left with the definite impression--apparently shared in by the jury--that the real reason the sale to Williams fell through was the belated insistence by the Greenbergs that 3.25 acres of the most valuable part of the property be excluded from the sale. The listing agreement, however, contained no such provision, and the sellers were not at liberty to amend the agreement by their letter rejecting Williams' final offer in which they said it had always been their intention to exclude the 3.25 acres.
 
 
 16
 In sum, the evidence justified the jury's finding that plaintiff produced a buyer ready, willing and able to purchase the listed property on the terms specified in the listing agreement and that but for the default of the owners the sale would have been consummated. Thus the plaintiff was entitled to his commission, and there was no error in the denial of defendants' motion for judgment notwithstanding the verdict.
 
 III.
 
 17
 The Greenbergs also contend the district court abused its discretion in denying their motion to join a counterclaim for breach of fiduciary duty, fraud and intentional interference with a contractual relationship. The facts alleged were largely within the Greenbergs' knowledge at the time of their answer yet they waited an additional three months until after the expiration of discovery to make the motion. We find no abuse of discretion in the trial court's denial of the motion to amend.
 
 The judgment of the district court is
 
 18
 AFFIRMED.