HAROLD KOHLER v. J. A. JONES CONSTRUCTION COMPANY,
A CORPORATION

No. 7326SC774

(Filed 16 January 1974)

**1. Contracts § 12— construction of contract**

Agreement that plaintiff would be "entitled to 5% of all cash monies recovered" on a dam project in a foreign country gave plaintiff the right to receive 5% of all cash monies received from the project without regard to whether those monies were the product of direct payments to defendant or a result of indirect payments such as the sale of recouped equipment or an award by the foreign government used by defendant to pay vendors and subcontractors of the project.

**2. Appeal and Error § 30; Witnesses § 7— answer outside scope of question — admissibility**

Although the answer of a witness exceeded the bounds of the question, the answer was properly admitted where it contained facts which were relevant to the inquiry.

**3. Contracts § 27— action on contract — sufficiency of evidence**

In an action to recover under an agreement that plaintiff would receive 5% of all monies recovered on a foreign dam project, plaintiff's evidence was sufficient to support findings by the jury that defendant and its partners had collected $653,000 as a result of the sale of equipment used in the dam project and that the government of the foreign country in which the dam was built had made an "award" of $1,000,000 to defendant and its partners.

**4. Appeal and Error § 31— misstatement of evidence — necessity for calling to court's attention**

Slight inaccuracies in the court's statement of the evidence must be called to the attention of the court in time to afford opportunity for correction in order for an exception thereto to be considered.

APPEAL by defendant from *Webb, Judge,* 30 April 1973 Session of Superior Court held in MECKLENBURG County.

This is a civil action in which the plaintiff, Harold Kohler, is attempting to recover for services allegedly rendered under a contract with the defendant, J. A. Jones Construction Company.

The defendant and its wholly owned subsidiary, the Charles H. Tompkins Company, owned a 75% interest in a joint venture entered into for the purpose of constructing the Derbendi Khan Dam Project in Iraq. This project was completed in 1962; however, the partners in this venture were unsuccessful in their

efforts to recover from the Government of Iraq claims totalling $16,123,288.00. In addition, they made unproductive attempts to secure the release from Iraq of certain equipment used by the partners in the construction of the dam. These above circumstances precipitated two separate agreements between plaintiff and defendant both of which called for plaintiff to render services which hopefully would result in defendant's realization of its claims.

Plaintiff was first employed by defendant in 1958 and served as Vice-President of its Heavy Construction Division. On 4 June 1964 the plaintiff and defendant entered into a written agreement (Plaintiff's Exhibit 1-A) under the terms of which plaintiff, acting as a consultant, and H. Haywood Robbins, acting as attorney, were to "immediately proceed and attempt to obtain an equitable settlement for the Derbendi Khan contract in Iraq." Both plaintiff and Robbins were to be paid 5% of the recovery amount for their individual and respective services. Between June and October of 1964 plaintiff resigned his position with defendant and established himself as an independent consultant; and in October, 1964, plaintiff, as an independent consultant, entered into another agreement with defendant (Plaintiff's Exhibit 2-A), the pertinent portions of which are as follows:

"In consideration of the services which you are to render as a consultant to the J. A. Jones Construction Company on the Derbendi Khan Dam Project, Iraq, you are to receive $2,000.00 per month for twelve (12) months' services. * * *

In addition to the consultant fee of $2,000.00 per month for 12 months, you will be entitled to 5% of all cash monies recovered on the Derbendi Khan Project.

This does not include any consideration for you for the return of our bank guarantees and removal of liquidated damages. However, should we lose our bank guarantees and/or monies due to liquidated damages, such net cash losses will be deducted before determining percent of participation.

* * *

It is clearly understood that this, along with lump sum payment of $10,000.00, completely fulfills all contracts

in writing and/or verbal between the J. A. Jones Construction Company and Harold Kohler."

Plaintiff continued in the employ of defendant under the October 1964 agreement until November 1965 at which time the defendant unilaterally terminated its relationship with plaintiff.

Plaintiff initiated the present action in March 1966 and at trial offered evidence which tended to show the following:

Plaintiff was closely connected with the Derbendi Khan Dam Project for a period of several years—initially as Vice-President of the Heavy Construction Division of defendant and after 6 October 1964 as independent consultant to defendant. Under the 6 October 1964 agreement, plaintiff rendered numerous services to the defendant. These services included: (1) Development of a scheme to construct a canal project in Iraq the dual purpose of which was to entice Iraq to pay the claims of the joint venture partners and to release equipment belonging to the joint venture; (2) In close conjunction with the canal project, plaintiff wrote letters, memoranda, and/or made visits to top governmental officials including the President of the United States, the Secretary of State, the Secretary of Commerce, the Undersecretary of State, one United States Senator, and other governmental officials, soliciting their assistance in the canal project; (3) Plaintiff assisted in the preparation of a voluminous document detailing the unpaid claims of the Government of Iraq prior to this document being submitted to the proper officials in that country.

Plaintiff's evidence further tended to show that in August 1965, the Economic Planning Board of Iraq made an "award" of approximately $1,000,000.00 to the joint venture partners and also that defendant was able to recoup approximately $653,000.00 from the sale of equipment released by Iraq. Plaintiff claims he is entitled to 5% of the total of these two sums.

Defendant's evidence tended to show the following: Mr. Stafford, treasurer of defendant, testified that the records of defendant corporation disclosed the sale of certain equipment recovered by the joint venture; however, he stated that no entry of any "award" made by the Government of Iraq had been placed on the books of the defendant. Defendant's evidence did not challenge either the receipt of proceeds from the sale of the equipment or the existence of an "award" but rather contended that these did not culminate in the reception by defendant of

"cash monies" as that term was intended to be used in the October 1964 agreement. Defendant's evidence also revealed that the canal project advocated by plaintiff was a source of displeasure among Iraq officials and had a negative rather than positive effect on defendant's hopes of recovery.

The following issues were submitted to and answered by the jury as indicated:

"1. Did the plaintiff and the defendant enter into a contract on October 6, 1964, as alleged in the Complaint?

ANSWER: Yes.

2. What amount, if any, is the plaintiff entitled to recover for services to defendant under that contract?

ANSWER: $74,000.00."

From a judgment for plaintiff entered on the verdict, defendant appealed.

*Harkey, Faggart, Coira & Fletcher by Charles F. Coira, Jr., and Francis M. Fletcher, Jr., for plaintiff appellee.*

*Warren C. Stack for defendant appellant.*

HEDRICK, Judge.

The numerous exceptions and assignments of error brought forward and argued by defendant present for resolution the following principal issues: (1) What was the intent of the parties in the 6 October 1964 agreement? (2) Was there sufficient competent evidence to support the submission of the issues to the jury and to support the verdict rendered? (3) Did the trial court commit prejudicial error in the charge to the jury?

I.

[1] The parties do not dispute the fact that they entered into an agreement on 6 October 1964 but rather their disagreement centers around the scope of such contract. Defendant corporation maintains that there was never any intention to compensate plaintiff for cash monies recovered by defendant in an indirect manner, while plaintiff contends that he is entitled to 5% of any cash monies recovered regardless of the direct or indirect form of such recovery. It is elementary that in con-

struing a contract to ascertain the intention of the parties, the court must take note of the language used, the purpose to be accomplished by the contract, the circumstances of the parties when they made the contract, and the subject matter of the contract. *Pike v. Trust Co.,* 274 N.C. 1, 161 S.E. 2d 453 (1968); *Sell v. Hotchkiss,* 264 N.C. 185, 141 S.E. 2d 259 (1965); *DeBruhl v. Highway Commission,* 245 N.C. 139, 95 S.E. 2d 553 (1956). See also, Corbin on Contracts, Vol. 3, § 538, pp. 67-69 (1960). Furthermore, "[i]f there be no dispute in respect of the terms of the contract and they are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written." *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E. 2d 906 (1946). Applying these principles to the present case, we determine that the clear intent of the parties in the 6 October 1964 agreement was that plaintiff should recover 5% of *all* cash monies received from the Derbendi Khan Dam Project without regard to whether these monies were the product of direct payments to defendant or a result of indirect payments such as the sale of recouped equipment or a governmental award used by defendant to pay vendors and subcontractors of the project.

Several factors support the preceding conclusion. In the October agreement the word "all" appears before the words "cash monies" in that portion of the contract which reads, ". . . you will be entitled to 5% of *all* cash monies recovered on the Derbendi Khan Dam Project" (our emphasis). Defined in a plain, ordinary manner "all" is a pervasive, wide-ranging word and should not be limited to a narrow meaning as argued by defendant. Additionally, the October contract expressly excludes "any consideration for [plaintiff] for the return of our bank guarantees and removal of liquidated damages." Defendant having taken the step to expressly exclude this item from plaintiff's recovery, the conclusion necessarily follows that failure to expressly exclude other methods of recovery results in their inclusion by plaintiff in the total sum of cash monies subject to his 5%.

The final point to be made on the question of the intention of the parties is that the circumstances surrounding the October agreement reveal that defendant and its joint partners were in danger of incurring substantial losses in the Derbendi Khan Project and thus perhaps were susceptible to entering into what might in hindsight seem a bad bargain. Nevertheless, "[t]he

agreement of the parties is controlling, and when the language is explicit, neither party may contend for an interpretation at variance with the language on the ground that the writing did not truly express his intent; nor may the courts grant relief merely because the contract is a hard one." 2 Strong, N. C. Index 2d, Contracts, § 12, p. 313.

## II.

[2, 3]   Next we must consider whether plaintiff successfully carried his burden of proving that defendant recovered certain "cash monies." Our discussion of this question necessarily includes defendant's contention that the court erred in admitting certain evidence. Evidence presented by the plaintiff plus cross examination of two of defendant's witnesses (the Treasurer of the defendant corporation and an employee of a subsidiary of defendant) disclosed that the Derbendi Khan partners had collected approximately $653,000.00 after 10 October 1964 as a result of the sale of equipment used in connection with the Derbendi Khan Project. Defendant at no time denied having received such proceeds but rather asserted, as we have already discussed above, that the agreement between the parties did not incompass payment to plaintiff for indirect "cash monies" received by defendant. The more difficult question is whether there was sufficient evidence to support inclusion of the so-called "award" in the total amount of "cash monies" out of which plaintiff was entitled to 5%. As to this point, defendant attacks as error the admission into evidence of certain testimony of H. Haywood Robbins, which testimony was in deposition form due to the fact that Robbins was no longer living. The most objectionable portion of this testimony is set forth below:

"Q. Is that Thomas Mann?

MR. STACK: Objection. Overruled.

A. Yes.

MR. STACK: Move to strike the answer. Overruled.

EXCEPTION No. 476

A. He was friendly with Mr. Kohler and I for some reason and he began to apply certain leverage to the Iraqian Government, through not only their, I think certain leverage was applied through, I don't think it, I know it, through other sources which we had contacted and

had kept informed by memorandum and as a result the Iraqian Government paid to the . . . at least Mr. Jones, Jr. and Sr. told Mr. Kohler and I, and this was confirmed by the State Department, some nine hundred thousand dollars plus, I can't remember the exact figure.

MR. STACK: Move to strike the answer.

COURT: I am going to allow the motion as to the statement that this was confirmed by the State Department. * * *"

It is quite obvious that the answer given is not responsive to the question asked, however, as Justice Higgins stated in *State v. Ferguson,* 280 N.C. 95, 185 S.E. 2d 119 (1971), "If an unresponsive answer produces irrelevant facts, they may and should be stricken and withdrawn from the jury. However, if the answers bring forth relevant facts, they are nonetheless admissible because they are not specifically asked for or go beyond the scope of the question." The answer given by Robbins contained facts quite relevant to the subject under discussion and was properly admitted even though it exceeded the boundaries established by the question. Furthermore, the testimony of Robbins was corroborated by the introduction of other evidence relating to the "award." This additional evidence includes: (1) Kohler's testimony regarding the award and (2) Plaintiff's Exhibit No. 51, which is a copy of Decision No. 32 (the "award"). We have carefully examined the exceptions relating to the admission of testimony and find no prejudicial error therein. Furthermore, we are of the opinion that the evidence was sufficient to require the submission of the case to the jury and to support the verdict rendered.

### III.

[4] The final issue for discussion is whether the trial court committed error in its instructions to the jury. Defendant correctly points out two mistakes made by the trial court in its recapitulation of the facts and claims that these were prejudicial in nature. This contention is deemed nonmeritorious because slight inaccuracies in the statement of the evidence must be called to the court's attention in time to afford opportunity for correction, in order for an exception thereto to be considered, *Lewis v. Barnhill,* 267 N.C. 457, 148 S.E. 2d 536 (1966); and defendant having failed to allert the court to these mistakes cannot now be heard to complain.

Defendant further contends that the trial court committed prejudicial error by expressing an opinion on the evidence in its instructions to the jury. We have carefully examined each of the exceptions upon which this contention is based and find that the court fairly, correctly, and adequately declared and explained the law arising on the evidence and expressed no opinion prejudicial to defendant in his recapitulation of the evidence.

Defendant has noted in the record 536 exceptions which he has grouped under 24 assignments of error. Some of these exceptions have been expressly abandoned and others are deemed abandoned under Rule 28 of the Rules of Practice in this Court, since defendant has advanced no argument or cited any authority in support thereof. The remaining exceptions have been carefully examined and considered by this court and found to be without merit.

We find no error in the trial of the superior court sufficiently prejudicial to warrant a new trial.

No error.

Judges CAMPBELL and VAUGHN concur.