LEON OLIVE v. PAUL J. WILLIAMS

No. 7826SC736

(Filed 31 July 1979)

1. Contracts § 12.1— unambiguous agreement—construction

The agreement between the parties establishing an association for the practice of law was clear and unambiguous, and the court therefore gave effect to its terms and did not, under the guise of construction, insert what the parties elected to omit.

2. Attorneys at Law § 7— contract between attorneys for division of fees—no ambiguity

In an action by plaintiff attorney seeking an accounting by defendant, his former associate, of all fees allegedly due plaintiff pursuant to articles of association entered into by the parties, there was no merit to defendant's contentions that the parties' contract was ambiguous and failed to provide for a division of fees after a termination of the association, and that defendant's promise to work for the fee schedule provided in the agreement was dependent upon plaintiff's promise to pay defendant's overhead as provided in paragraph one of their contract, since the agreement clearly provided that, upon termination of the association, defendant could retain clients originally attracted to the partnership upon the condition that the regular fee division schedule would continue; the agreement was silent with respect to expenses incurred by defendant or avoided by plaintiff after termination; and defendant's promise to work was not dependent upon plaintiff's promise to pay overhead.

3. Attorneys at Law § 7— contract between attorneys for division of fees—applicability to fees actually collected

In an action for an accounting of fees derived by defendant from clients which he took with him after terminating his association with plaintiff's law firm, plaintiff was entitled to only a percentage of those fees actually collected by defendant.

4. Attorneys at Law § 7— termination of association for practice of law—division of fees

In an action for an accounting of fees derived by defendant from clients which he took with him after terminating his association with plaintiff's law firm, plaintiff was not entitled to any portion of fees derived from a client who retained defendant after the date of defendant's termination of the association but before defendant actually left plaintiff's premises.

5. Rules of Civil Procedure § 15.1— amendment of answer—motion denied—no abuse of discretion

The trial court did not abuse its discretion in denying defendant's motion to amend his answer to "elaborate on his expenses as a setoff to any amount that may be due Plaintiff," since the court, at the same time it denied the motion to amend, granted summary judgment rejecting defendant's setoff theory

which was raised, perhaps improperly but nevertheless considered by the trial court, in his affidavits, answers to interrogatories, and prayer for relief in his answer to the complaint.

### 6. Attorneys at Law § 7.1 — contingency fee contracts — validity

There was no merit to defendant's contention that contingency fee contracts entered into between defendant and clients of plaintiff's law firm, and upon which plaintiff relied for his share of the fees were void as contrary to public policy, since the contracts specifically provided that offers in compromise would be submitted to the clients for approval or rejection, and the provision entitling the attorney to a fee of 30% of the recovery when settlement was reached prior to litigation and 35% upon recovery after litigation was initiated did not smack of champerty and maintenance, as the slight difference in fees would seldom fully compensate the attorney for the additional effort necessary in pursuing the matter through litigation.

APPEAL by defendant from *Ferrell, Judge*. Order entered 5 May 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 30 April 1978.

Defendant is a former associate in the law firm of Olive, Howard, Downer and Williams in Charlotte, of which firm plaintiff was senior member. Defendant, after giving proper notice, terminated his association with the firm effective 1 January 1976. He actually left the premises 15 January 1976, at which time he opened his own office for the practice of law. The articles of association (see Appendix) refer to Olive as the "principal" and Williams as an "associate" in the firm.

This action was filed on 22 April 1976, seeking an accounting by defendant of all gross fees which are allegedly due to the plaintiff pursuant to the articles of association which were entered into between plaintiff and defendant approximately 45 days after defendant became an associate in the firm. The full text of the articles of association appears in the Appendix to this opinion. Plaintiff alleges that upon defendant's termination of his association, defendant took with him certain files and pending cases which he had been handling prior to his termination. He demands an accounting of the gross fees generated by those cases and an award of the sum to which he is entitled in accordance with the agreement of the parties as embodied in the articles of association. Plaintiff alleges that he has performed according to the provisions of the agreement and that defendant has refused to comply with his demand for payment.

Defendant answered the complaint averring as a third defense that the written agreement was not the full agreement between the parties. He alleges that he was induced to leave his position with the Mecklenburg County District Attorney and to enter into an association with plaintiff by oral promises that defendant would handle all of the firm's criminal work, and that the civil work would be divided equitably among all the associates of the firm. He avers that contrary to the oral agreement, plaintiff did not equitably distribute the business; that he was not assigned all of the criminal cases; and that, contrary to paragraph nine of the written agreement, other members of the firm were allowed to retain a higher percentage of their gross fees than was he. In response to plaintiff's interrogatories, defendant asserted that although the cases were supposed to be distributed in such a manner that all associates of the law firm would earn substantially the same income, in fact, the work was so distributed that the two other associates earned approximately $80,000 each whereas defendant earned approximately $16,000. Defendant prayed that the action be dismissed for plaintiff's failure to perform according to the contract between the parties. In the alternative, defendant prayed that the court allow defendant a setoff against sums allegedly due under the agreement for the expenses incurred in bringing to a final determination those cases pending on 1 January 1976.

Extensive discovery was utilized by each party. The relevant information revealed through discovery which is pertinent to this decision will be summarized in the opinion below.

On 20 October 1977, plaintiff filed a motion for summary judgment with respect to the issue of liability, pending further discovery on the issue of damages. On 21 February 1978, the motion was renewed, and plaintiff also sought a ruling with respect to the issue of damages. Defendant had, in the intervening period, filed on 15 December 1977, a motion to abandon and strike his original "Third Defense" and to amend his third defense to substitute in its place more specific averments with respect to his alleged right to a setoff for expenses incurred in handling the cases originating during his association with plaintiff which were brought to a conclusion after 1 January 1976.

Summary judgment was entered in favor of the plaintiff on 5 May 1978, in the amount of $27,550 with interest at the annual rate of six per cent from 1 February 1978, and for $2,305.57 plus six per cent interest from 1 August 1977. From the entry of judgment, which also included a denial of defendant's motion to amend, defendant appeals.

*James, McElroy & Diehl, by William K. Diehl, Jr., and David M. Kern, for plaintiff appellee.*

*Curtis & Millsaps, by Cecil M. Curtis, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant's primary contention on appeal is that summary judgment was improvidently granted in the face of unresolved issues of fact with respect to both liability and damages. Defendant first contends that the articles of association were so ambiguous as to require that the intent of the parties be determined by a jury upon competent evidence as to the real agreement. *See generally Lumber Co. v. Construction Co.*, 249 N.C. 680, 107 S.E. 2d 538 (1959). However, when a written contract such as this one is plain and unambiguous on its face, the court does not resort to construction but determines the legal effect of the agreement. *Briggs v. Mills, Inc.*, 251 N.C. 642, 111 S.E. 2d 841 (1960). Clear and express language of the contract controls its meaning, and neither party may contend for an interpretation at variance with the language on the ground that the writing did not fully express his intent. *Kohler v. Construction Co.*, 20 N.C. App. 486, 201 S.E. 2d 728 (1974), *cert. denied*, 285 N.C. 85, 203 S.E. 2d 58 (1974). Even though ambiguities in a written contract are to be resolved against the party who drafted the writing, the plaintiff in this case, such a construction is only available when there does, in fact, exist an ambiguity. The language of the contract before us is clear and unambiguous. We must, therefore, give effect to its terms, and we will not, under the guise of construction, insert what the parties elected to omit. *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539 (1962).

[2] Defendant contends that the contract is ambiguous and fails to provide for a division of fees after a termination of the associa-

tion under paragraph eleven of the agreement. (See Appendix.) Paragraph eleven provides for the automatic renewal of the agreement each December for the next 12-month period unless written notice of an intention to terminate at the end of the year is given 30 days in advance. In support of his argument that paragraph eleven of the contract is ambiguous, defendant refers to paragraph twelve, the "for cause" termination provision, which specifically incorporates the division of fees arrangement specified in paragraphs five and six. Paragraph six establishes that, in the event of the termination of the association (it does not differentiate between "automatic termination" or termination "for cause"), the client in a pending case shall have the option to retain the associate or to have the matter transferred to Olive, and that the division of fees shall continue according to paragraph five. Under paragraph five, 40% of the associate's gross fees earned in all cases generating fees greater than $200 and 50% of those in all cases generating $200 or less are to be paid to Williams by Olive. Defendant contends that the failure of paragraph eleven to make specific references to paragraphs five and six indicates that the parties did not agree to a method for dividing fees in case of a termination of the agreement under paragraph eleven. In further support of his position, defendant argues that it would be unreasonable to assume that the parties agreed to a division of fees upon an "automatic termination" that failed to take into account the alleged savings plaintiff would enjoy by no longer having to pay the office expenses of defendant after termination of the agreement and pending resolution of the cases taken by defendant.

We are compelled by the plain language of the agreement to conclude that paragraphs five and six govern terminations under both paragraph eleven and paragraph twelve. Although we agree that the agreement is absolutely silent with respect to expenses incurred by defendant or avoided by plaintiff after termination, we cannot agree that this fact compels a conclusion that the written agreement was not complete and that the parties actually expected that defendant would be entitled to credit for such expenses. We do not assume, as does defendant, that the plaintiff saved expenses when defendant terminated his association. Even if this was in fact true, we are not free to change the agreement of the parties. It is apparent that the agreement contemplated

that, upon termination of the association, defendant could retain clients originally attracted to the "partnership" upon the condition that the regular fee division schedule would continue. Although defendant would undoubtedly incur his own office expense after terminating the association, he was taking with him clients of the partnership and thus benefiting from his association with the plaintiff.

Defendant also contends that the defendant's promise to work for the fee schedule provided in the agreement was dependent upon plaintiff's promise to pay defendant's overhead as provided in paragraph one of the contract. He suggests that appropriate rule of construction of the agreement is that "[w]here mutual promises go to the whole consideration on both sides, they are, in the absence of any clear manifestation of a contrary intention, mutual conditions, the one precedent to and dependent upon the other." 17 Am. Jur. 2d, Contracts § 322 at 754. Accepting *arguendo* this rule of construction, it is apparent from the nature of a law partnership or associaiton that there are other elements of consideration flowing between the parties. Under such circumstances, whether covenants are dependent or independent depends entirely upon the intention of the parties construed in light of the nature of the contract, the relation of the parties thereto, and other competent evidence. *Wade v. Lutterloh*, 196 N.C. 116, 144 S.E. 694 (1928); *Flour Mills v. Distributing Co.*, 171 N.C. 708, 88 S.E. 771 (1916); *Dwiggins v. Shaw*, 28 N.C. 46 (1845). In this case, the intention is clear that the promises are not dependent. Paragraph six specifically provides that the method of division of the fees continue after termination. Although defendant contends that his agreement to accept the fee schedule upon termination was contingent upon plaintiff's agreeing to continue to pay expenses in those cases defendant took with him, it is abundantly clear that plaintiff made no such agreement. The contract is completely silent with respect thereto, and no covenant exists upon which defendant's covenant could be said to depend.

[3] Defendant further contends that genuine issues of material fact were presented by the pleadings, interrogatories, requests for admission, and depositions with respect to the issue of damages. Defendant's contention is that the trial court improperly resolved an issue of fact when it ruled that plaintiff was entitled

to $2,305.57 as his share of the fee generated by the Harrington file despite defendant's evidence that he received a fee of only $2,152.55. Plaintiff contends, on the other hand, that plaintiff was entitled to 60% of the fee to which defendant was entitled by the contingency fee contract. His calculations were that defendant was entitled to $4,200 (35% of $12,000) and that plaintiff, therefore, was entitled to $2,520 (60% of $4,200) plus interest of $75.60 and costs paid by plaintiff of $139.98, totalling $2,735.58. Plaintiff contends that defendant's acceptance of less than that to which he was entitled did not affect plaintiff's right to his share of the full contractual fee. The trial court awarded plaintiff $2,305.57 plus interest at 6% per annum from 1 August 1977 as his share of the Harrington fee.

According to the record, the following facts with respect to the Bruce Harrington matter are uncontested by the defendant: Defendant received checks totalling $3,842.61 for fees and expenses incurred. He incurred $1,690 in expenses of the trial, $139.98 of which was paid by plaintiff prior to 1 January 1976, and which amount was placed into defendant's savings account for the benefit of plaintiff. Defendant paid $252.55 to an attorney associated to assist in the case. He placed $1,000 of the fee into savings for the benefit of plaintiff. The defendant represented Harrington under a contingency fee providing for 30% of the settlement prior to litigation, and 35% after litigation is initiated. Harrington actually recovered $12,000 in the lawsuit minus certain costs incurred after offer of judgment was rejected. *See* G.S. 1A-1, Rule 68.

We find no genuine issue of material fact with respect to the Bruce Harrington matter. Resolution of this controversy presents a question of interpretation of the articles of association, not a question of fact. Paragraphs four and five (see Appendix) of the agreement govern the division of fees. Under those provisions, Olive is entitled to a certain percentage of "[a]ll fees *derived* from the performance of professional services". Derivative, the adjective form of the verb to derive, has been defined as "[a]nything obtained or deduced from another". Black's Law Dictionary (4th ed. 1951). The choice of the contractual language is less than artful. Nevertheless, the verb "to derive", when used where a somewhat similar connotation is intented as in this contract, is defined as "to acquire, get or draw". Webster's Third, Una-

bridged (1968). In giving to the language of the contract its or-
dinary and usual meaning, as we must unless there is competent
evidence to show that another meaning was intended, we are of
the opinion that plaintiff is entitled to only a percentage of those
fees actually collected by the defendant. We find support for our
interpretation of the contract in defendant's affidavit, which must
be accepted as true in considering plaintiff's motion for summary
judgment. *See Nasco Equipment Co. v. Mason,* 291 N.C. 145, 229
S.E. 2d 278 (1976); *Railway Co. v. Werner Industries,* 286 N.C. 89,
209 S.E. 2d 734 (1974). Defendant's answers to requests for admis-
sions asserted that it was the custom in plaintiff's law firm to ad-
just fees whenever a trial or settlement resulted in a low
recovery so as to charge the injured party a fair fee commen-
surate with the recovery. Nevertheless, it appears that the trial
court accepted defendant's interpretation of the contract. The
amount of the judgment with respect to the Harrington case was
apparently determined as a percentage of the gross payments
defendant received for his services.[1] However, it appears that in
calculating the percentage, the court improperly included as part
of the gross fee reimbursement for expenses of the litigation. For
this reason, the matter must be remanded for a correction of the
judgment in accordance with this opinion.

[4] Defendant next contends that plaintiff's evidence in support
of his motion for summary judgment failed to establish that he
was entitled to a share of the fees in those cases upon which the
trial court based its order. The trial court's award is apparently
based in part upon the calculations contained in plaintiff's second
request for admissions which contains an asserted calculation of
plaintiff's share of fees in 48 cases. Defendant admitted in
response to plaintiff's first request for admissions that each of
these cases was initiated while he was with plaintiff's firm and
were taken by him when he opened his own office. With only
minor exceptions, defendant has admitted the accuracy of plain-
tiff's calculations and information with respect to the fees in those
48 cases. We find no genuine issues of material fact with respect
to which cases plaintiff was entitled to a share of the fee. Never-
theless, there does exist a question of law with respect to
whether plaintiff is entitled to a share of the fees generated by
the Viola Ardrey case. The question arises because defendant was

---

1. 60% of $3,842.61, the total payment received for fees *and expenses,* is $2,305.57.

retained by Ardrey after 1 January 1976, but before 15 January 1976, the date defendant actually left the premises. Plaintiff permitted defendant to remain in plaintiff's office until 15 January 1976 while awaiting preparation of defendant's new office. We find no evidence in the record of the parties' agreement with respect to work retained during defendant's holdover period. Insofar as the judgment includes any fee due plaintiff as a result of the Ardrey matter, the case must be remanded for further proceedings to resolve this issue.

[5]   Defendant's second assignment of error is directed to the trial court's denial of his motion to amend his answer and third defense to "elaborate on his expenses as a setoff to any amount that may be due Plaintiff". A motion to amend a pleading, made more than 30 days after the original pleading is served, shall be freely granted when justice so requires. G.S. 1A-1, Rule 15(a); see *Gladstein v. South Square Assoc.*, 39 N.C. App. 171, 249 S.E. 2d 827 (1978), *cert. denied*, 296 N.C. 736, 254 S.E. 2d 178 (1979). However, the motion is addressed to the discretion of the trial court. *Hudspeth v. Bunzey*, 35 N.C. App. 231, 241 S.E. 2d 119 (1978), *cert. denied* and *appeal dismissed*, 294 N.C. 736, 244 S.E. 2d 154 (1978). We find no abuse of discretion. At the same time the court denied the motion to amend, it granted summary judgment rejecting defendant's setoff theory which was raised, perhaps improperly but nevertheless considered by the trial court, in his affidavits, answers to interrogatories, and prayer for relief in his answer to the complaint. Amendment of the complaint at that time would have been futile.

[6]   Finally, defendant raises for the first time on appeal the issue of whether the contingency fee contracts entered into between defendant and clients of plaintiff's law firm, and upon which plaintiff relies for his share of the fees, are void as contrary to public policy. Defendant argues that the plaintiff's action should be dismissed, and the parties left as they stand, because the contingency fee contract language quoted below smacks of champerty and maintenance. The contract language in question appears as follows: "I [the client] agree that in the event you recommend litigation as necessary or expedient in the settlement of the case, I will not unreasonably withhold my consent thereto." Defendant contends that if the contingency fee contracts are void

because they contain such language the courts should not interfere, but should leave the parties as they stood prior to the lawsuit.

Contracts for contingent fees are closely scrutinized by the courts where there is any question as to their reasonableness. *Randolph v. Schuyler*, 284 N.C. 496, 201 S.E. 2d 833 (1974). Such contracts are valid when the contract is entered into in good faith, without suppression or reserve of fact or of apprehended difficulties, without undue influence, and for reasonable compensation. *Casket Co. v. Wheeler*, 182 N.C. 459, 109 S.E. 378 (1921). However, the defendant is correct that contingency fee contracts providing against compromise or settlement of a case without the attorney's consent often have been declared as void against public policy for inhibiting compromise or settlement. *See generally* 7 Am. Jur. 2d, Attorneys at Law § 227; Annot., 121 A.L.R. 1122 (1939). Nevertheless, we find this contract to be reasonable and not contrary to public policy. The contract specifically provides that offers in compromise will be submitted to the client for approval or rejection. It by no means reserves to the attorney the authority to approve or reject the offer of settlement. Moreover, the contract specifically entitles the attorney to a fee of 30% of the recovery when settlement is reached prior to litigation, 35% upon recovery after litigation is initiated. It appears to this Court that the fee schedule is in fact more beneficial to the attorney where settlement is effectuated prior to litigation than when it becomes necessary to proceed with litigation in order to recover. The slight difference in fees would seldom fully compensate the attorney for the additional effort necessary in pursuing the matter through litigation. This assignment of error is overruled.

For the foregoing reasons, the order of the trial court is affirmed in part and remanded in part for further proceedings and entry of judgment in accordance with this opinion.

Affirmed in part and remanded for further proceedings.

Judges HEDRICK and WEBB concur.

APPENDIX

ARTICLES OF ASSOCIATION

THIS INDENTURE made and entered into by and between LEON OLIVE (hereinafter referred to as Olive) and PAUL J. WILLIAMS, (hereinafter referred to as Associate)

WITNESSETH:

The parties hereto are duly licensed and practicing attorneys at law associated under the firm name, OLIVE, HOWARD, DOWNER & WILLIAMS, at Suite 1200, The Johnston Building, Charlotte, North Carolina. The parties hereto are not partners in the true legal sense; their relationship is that of principal and associate, Olive being the principal. The relationship between the parties has heretofore been governed by an informal oral understanding. The purpose of this instrument is to formalize the relationship between them.

For and in consideration of the mutual covenants herein contained, it is agreed:

1. Olive agrees to maintain suitable office space for the firm and to provide a private office for the associate. Olive also agrees to defray all operating expenses for the firm, including providing adequate secretarial and investigation services, telephones, office equipment, supplies, letterheads, postage, bookkeeping and all other expenses necessarily incident to the practice of law by the firm. All property purchased by Olive shall remain his sole and separate property. All property purchased by the associate and used by him in connection with the firm's practice shall remain the sole and separate property of the associate.

2. A secretary shall be assigned to do the work of the associate and to the extent necessary she shall work under the supervision of the associate, but in the event disciplinary action or dismissal shall become necessary or desirable, such action shall be taken by Olive or by the associate with Olive's express authorization.

3. Olive shall have the sole responsibility for the employment of all personnel of the firm.

4. All fees derived from the performance of professional services by the associate shall be paid into the firm through a trust account maintained by Olive either in his own name or in the name of the firm, and all records pertaining to the receipt of fees shall be maintained by an employee of Olive.

5. Olive shall pay to the associate as promptly as practicable after the receipt of all fees attributable to the professional services of the associate, 40% of the gross fees in all cases wherein the fee is greater than $200.00. In all such cases wherein the fee is $200.00 or less, Olive shall pay to the associate 50% of the gross amount of such fees. No fees for professional services rendered solely by Olive shall be divisible hereunder.

6. In the event of termination of this agreement, with respect to all cases being handled by the associate, the client shall have the option to have the associate to continue to handle the case or to have Olive assume the responsibility for its handling. In either event, the fee arrangement hereinabove outlined in Paragraph 5. shall be applicable and a division of fees in accordance with Paragraph 5. hereof shall be made within ten days after receipt thereof.

7. Olive agrees to maintain at his own expense and for his benefit and that of the associate, professional liability insurance applicable to the work of the associate, having limits of not less than $150,000.00.

8. A log shall be maintained by Olive (and he shall furnish a copy thereof to the associate) of all cases being handled for the firm by the associate.

9. It is expressly understood and agreed that, contemporaneously with the execution of this indenture, Olive is also entering into identical agreements with the other associates of the firm. Olive reserves the right at any time in the future to enter into similar Articles of Association with additional associates and in his discretion, to appropriately change the firm name to reflect the addition of such associates.

10. It is expressly understood and agreed that, because of the use of a firm name which implies to the general public that the firm is a partnership and that each member of the firm is individually responsible for the actions of the firm, neither party

hereto shall conduct his professional practice in such a manner as to conflict with the canons of ethics of the Bar or so as to reflect discredit upon the firm or the other party hereto. In the event of any such action or conduct on the part of either party hereto which shall render the other liable therefor, the party practicing such conduct shall hold the other harmless and indemnify him from the claims of all persons whomsoever arising out of or any matter related to any such action or conduct.

11. Unless sooner terminated as hereinafter provided, the term of this Agreement shall be one year commencing January 1, 1972, and ending December 31, 1972, provided however that this Agreement shall be automatically renewed for additional successive periods of one year unless one of the parties shall, at least thirty (30) days prior to the end of the initial term or any renewal term hereof give to the other written notice of intention to terminate at the end of the then current term. Upon the giving of such notice, this Agreement shall automatically terminate at the end of the then current term.

12. Notwithstanding the provisions of Paragraph 11 above, either party hereto may for cause, terminate this Agreement and the relationship between the parties hereto upon giving the other thirty days notice of intention to terminate. In the event of such termination, the provisions of Paragraphs 5. and 6. above shall apply with respect to all pending cases then being handled by the associate.

IN WITNESS WHEREOF the parties hereto have hereunto respectively set their hands and seals this 6 day of January, 1972.

s / LEON OLIVE              (Seal)

s / PAUL J. WILLIAMS       (Seal)