UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CEM CORPORATION,
                    *Plaintiff-Appellant,*

v.                                                      No. 02-1369

PERSONAL CHEMISTRY, AB,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-01-225-3-MU)

Argued: December 3, 2002

Decided: January 15, 2003

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Albert Peter Allan, SUMMA & ALLAN, P.C., Charlotte, North Carolina, for Appellant. Grady Michael Barnhill, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appellee. **ON BRIEF:** William C. Raper, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In December 2000, CEM Corporation, a North Carolina corporation, filed suit in Sweden against Personal Chemistry, AB, a Swedish corporation with its principal place of business in Sweden that has never registered to do business in North Carolina. CEM alleged that Personal Chemistry infringed a European patent belonging to CEM. A month later, several employees of Personal Chemistry and its United States affiliate traveled to North Carolina to attempt to settle the Swedish patent infringement action with CEM officials. The two sides negotiated an "agreement-in-principle," which provided for dismissal of the Swedish litigation and a license to Personal Chemistry for the patent at issue and another European patent in exchange for a one-time payment of $700,000 by Personal Chemistry to CEM. Personal Chemistry's board of directors, however, subsequently refused to approve the agreement-in-principle.

CEM then filed the present action in North Carolina against Personal Chemistry, alleging breach of the agreement-in-principle, intentional and negligent misrepresentation, and unfair and deceptive trade practices. On Personal Chemistry's motion, the district court dismissed the action for lack of personal jurisdiction over Personal Chemistry. *See* Fed R. Civ. P. 12(b)(2). CEM now appeals.

Because the district court dismissed the complaint without conducting an evidentiary hearing, CEM was only required to make a *prima facie* showing that personal jurisdiction existed. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). To carry its burden, CEM had to show that (1) the North Carolina long-arm statute confers personal jurisdiction over Personal Chemistry; and (2) the exercise of personal jurisdiction over Personal Chemistry "comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Id.* As the district court noted, because the North Caro-

lina long-arm statute extends to the limit permissible under the Due Process Clause, *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982), CEM simply had to demonstrate that Personal Chemistry had sufficient minimum contacts with North Carolina to satisfy due process.

The Supreme Court has articulated two tests for determining whether a defendant's contacts with a forum suffice to confer personal jurisdiction over the defendant. If the cause of action does *not* arise from or relate to the defendant's activities in the forum, a plaintiff must prove that the defendant's contacts are "continuous and systematic" and so support the exercise of *general* personal jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). If the cause of action *does* arise out of or is related to the defendant's activities within the forum, the plaintiff need only prove that a court has *specific* personal jurisdiction over a defendant by demonstrating that

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice[.]

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994).

The district court dismissed CEM's complaint, finding that it failed to make the requisite showing of sufficient contacts to support either general or specific personal jurisdiction over Personal Chemistry. Although CEM apparently disagrees with both holdings, on appeal it only proffers arguments challenging the district court's refusal to exercise specific personal jurisdiction.[1]

---

[1]Perhaps CEM does not mount an appellate challenge to the district court's finding of no general personal jurisdiction because it recognizes that such an argument would be fruitless. The requirement that a plaintiff seeking to establish general personal jurisdiction must demonstrate that a defendant had "continuous and systematic contacts" with the forum state, *Helicopteros*, 466 U.S. at 415-16, mandates a showing "significantly higher" than that necessary for specific personal jurisdiction. *See ESAB Group Inc. v. Centricut Inc.* 126 F.3d 617, 623 (4th Cir. 1997).

CEM first contends that Personal Chemistry's "contract with CEM," i.e. the agreement-in-principle that emerged out of the settlement negotiations, in and of itself "subject[s] [Personal Chemistry] to specific personal jurisdiction in North Carolina." Brief of Appellant at 16. CEM argues that Personal Chemistry's provisional acceptance of the agreement-in-principle and subsequent asserted breach of and disregard for that agreement, which form the basis of the present action, subject it to specific personal jurisdiction in North Carolina. Assuming, arguendo, that the agreement-in-principle constitutes a binding contract (a point that Personal Chemistry has consistently refused to concede), the Supreme Court has nonetheless expressly considered and rejected such an argument, explaining that "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (emphasis in original).

CEM fares no better with its argument that the district court could exercise specific personal jurisdiction over Personal Chemistry because, in the agreement-in-principle, Personal Chemistry assertedly undertook "continuing obligations for the life of the patents." Brief of Appellant at 24. This argument is premised on the licensing agreements for two European patents that constituted part of the agreement-in-principle. As the district court noted, however, these licensing agreements required an up-front, lump-sum payment of royalties rather than continuing or periodic royalty payments. Thus, under the licensing agreements, Personal Chemistry had no "continuing duty to pay royalties or to offer an accounting of products sold incident to a royalty calculation." Accordingly, the licensing agreements (like the agreement-in-principle itself) had no ongoing connection to North Carolina.

Nor can CEM prevail on its contention that Personal Chemistry purposefully directed other activities toward North Carolina in a way sufficient to establish specific personal jurisdiction. CEM maintains that such "purposefully directed" activities include (1) Personal Chemistry's actions in negotiating, provisionally agreeing to, and then reneging on the agreement-in-principle; (2) Personal Chemistry's

sales of its product to another company in North Carolina; (3) a seminar given in North Carolina; (4) advertisements on its website combichem.net; (5) participation in trade shows directed, in part, at North Carolina companies; and (6) full page advertisements in various national trade publications.

All of these activities, except for the first group, have nothing to do with the dispute at issue in this case and thus are irrelevant in any consideration of *specific* personal jurisdiction. Nevertheless, CEM maintains that because these contacts involve technology and products that are based in part on the patents at issue in the licensing agreements, which in turn constituted part of the agreement-in-principle, these additional contacts somehow provide a basis for specific personal jurisdiction. This argument fails. The dispute in this case is not a patent infringement action, but an action for breach of an agreement-in-principle to settle a patent infringement action (and alleged misrepresentations involving settlement discussions). Thus, it is the contacts surrounding the proposed settlement and agreement-in-principle, not contacts involving the sale or advertising of a product, which may be tangentially related to one of the patents at issue in the Swedish patent infringement action, that must be the basis for specific personal jurisdiction in this case. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277-78 (7th Cir. 1997) (stating that additional unrelated contacts cannot be aggregated for purposes of specific personal jurisdiction and holding that in breach of contract cases only the dealings between the parties with respect to the contract are relevant to minimum contacts analysis); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996) (holding that in a breach of contract case it is only the "dealings *between the parties in regard to the disputed contract*" that are relevant to minimum contacts analysis (emphasis in original)); *Barone v. Rich Brothers Interstate Display Fireworks Co.*, 25 F.3d 610, 615, n.5 (8th Cir. 1994) (finding that additional unrelated contact was irrelevant to question of specific personal jurisdiction).

As to Personal Chemistry's actions surrounding the agreement-in-principle, they do involve the dispute at issue here and so arguably could provide a basis for specific personal jurisdiction. However, none of these activities indicate that Personal Chemistry "purposefully avail[ed]" itself of the "benefits and protections" of the laws of

North Carolina sufficient to establish personal jurisdiction over it. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Personal Chemistry merely sent its representatives on a single visit to North Carolina for the sole purpose of discussing settlement of a patent infringement action filed against it in Sweden, involving a European patent, and alleged infringing conduct occurring in Sweden. After this single meeting, Personal Chemistry's outside counsel had a few telephone conversations with CEM representatives regarding settlement and, by facsimile, sent them drafts of the agreement-in-principle and informed them that Personal Chemistry's Board ultimately rejected its terms.

Taken together, these contacts do not constitute purposeful acts directed by Personal Chemistry to the State of North Carolina sufficient to establish personal jurisdiction over Personal Chemistry in North Carolina. One visit to the state, accompanied by a few telephone calls and faxes to settle litigation initiated against it in Sweden, would not put Personal Chemistry on notice that it "should reasonably anticipate being haled into court" in North Carolina. *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Indeed, the *only* reason Personal Chemistry initiated any of these contacts with North Carolina was to attempt to settle a suit filed against it by a North Carolina corporation in Sweden. It would be very odd to permit a plaintiff to obtain personal jurisdiction over a defendant on the basis of the defendant's attempts to settle litigation begun by the plaintiff on the defendant's home turf, presumably because the plaintiff could not obtain personal jurisdiction over the defendant on the plaintiff's own turf in the original action.[2] In any event, these contacts clearly do not provide a basis for asserting personal jurisdiction over Personal Chemistry in North Carolina. *Compare Diamond Healthcare of Ohio,*

---

[2]We note that even if CEM had made a sufficient showing to support specific personal jurisdiction, exercise of such jurisdiction over Personal Chemistry would likely offend traditional notions of fair play and substantial justice. *See Asahi Metal Industry Co. Ltd. v. Superior Court of California*, 480 U.S. 102, 115-16 (1987). Such concerns take on heightened importance when, as here, the issue involves an exercise of personal jurisdiction over non-U.S. corporations. *See id.* at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

*Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451-52 (4th Cir. 2000) (refusing to extend personal jurisdiction in Virginia over foreign defendant, even though defendant contracted with Virginia corporation after telephone calls, letters and faxes to Virginia, because "bulk of services" not performed in Virginia); *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 478-79 (4th Cir. 1993) (finding contacts with Maryland "insubstantial," although contract made in Maryland, after purposeful initiation by the foreign defendant and several weeks of negotiations involving letters, faxes, and telephone calls to Maryland).

For all of these reasons, the judgment of the district court is

*AFFIRMED*.