SMITH ARCHITECTURAL METALS, LLC Plaintiff v. AMERICAN RAILING SYSTEMS, INC. Defendant and Third Party Plaintiff v. FIRST LINE COATINGS, INC., Third Party Defendant

No. COA09-1620

(Filed 7 September 2010)

**1. Appeal and Error— interlocutory order—personal jurisdiction**

An appeal from a dismissal for lack of personal jurisdiction was from an interlocutory order but was heard because defendant properly proceeded under N.C.G.S. § 1-277(b).

**2. Jurisdiction— minimum contacts—attempts to resolve problem without litigation**

Defendant First Line did not possess sufficient minimum contacts with North Carolina for personal jurisdiction where it had no contact with North Carolina prior to an email to a North Carolina corporation (Smith Metals) detailing its efforts to assess and remedy a problem on railings it had painted for another out-of-state corporation (American Railing). It would "offend traditional notions of fair play and substantial justice" to allow our courts to obtain personal jurisdiction solely on the basis of sincere attempts to remedy the situation without resort to litigation.

Appeal by third party defendant from order entered 17 September 2009 by Judge Carl R. Fox in Alamance County Superior Court. Heard in the Court of Appeals 12 May 2010.

*Patterson Dilthey, LLP, by Christopher J. Derrenbacher and Eric G. Sauls, for third party plaintiff-appellee.*

*Vernon, Vernon, Wooten, Brown, Andrews & Garrett, P.A., by Benjamin D. Overby, for third party defendant-appellant.*

HUNTER, Robert C., Judge.

Third party defendant First Line Coatings, Inc. ("First Line") appeals from an order entered 17 September 2009 denying First Line's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure. After careful review, we reverse the trial court's order.

## Background

The record tends to establish the following facts: In March 2007, plaintiff, Smith Architectural Metals, LLC ("Smith Metals"), a North Carolina corporation, contracted with defendant and third party plaintiff, American Railing Systems, Inc. ("American Railing"), a Pennsylvania corporation, to supply railing materials to Smith Metals. American Railing then subcontracted with First Line, a Pennsylvania corporation, to apply a "powder coating" to the railings. First Line applied the coating and returned the railings to American Railing who then shipped the finished product to Smith Metals in North Carolina. Smith Metals then installed the railings in Durham, North Carolina.

Within approximately three months after installation of the railings, the coating on the railings "began to crack, flake, peel off and generally fail[.]" Smith Metals notified American Railing of the coating defect, and American Railing informed First Line that there was a problem with the coating it applied. On 27 February 2008, Brian Brocious ("Brocious"), president of First Line, emailed a representative of Smith Metals and informed him that he was making arrangements to come to North Carolina on 3 March 2008 to "assess the situation and fix the problem ASAP." It is unclear whether Brocious ever traveled to North Carolina. On 31 March 2008, Brocious emailed Donald Powell ("Powell") of Smith Metals to inform him that a local contractor, Allen Wells ("Wells"), would be coming to inspect the railings either that day or the following day. Brocious further stated in the email: "We have a joint effort between myself, Cardinal Paints, and Allen [E]lectrostatic [C]ompany" to assess the railing and ascertain the needed repairs. According to Brocious, "Cardinal Paints is working on a[n] exact match to fix paint problems." Brocious emailed Powell again on 9 April 2008 to inform him that Wells would be arriving that Friday to assess the situation. On 16 April 2008, First Line representative Sherrie Neely sent a fax to Wells in North Carolina asking Wells where the paint needed to be shipped.

The record does not establish the outcome of the repair attempts. First Line issued a check in the amount of $1,400.00 to Smith Metals on 14 May 2008 and another check in the amount of $3,400.00 on 22 May 2008. First Line sent a fax to Smith Metals on 22 May 2008 indicating that the $3,400.00 check had been sent. On 2 and 3 June 2008, Brocious sent emails to "Steve" with Smith Metals indicating a desire to reimburse Smith Metals for the railings. On 1 July 2008, Brocious sent Steve an email requesting "18 to 20 months to pay you back on this $43,176.88[.]"

On or about 6 November 2008, Smith Metals filed a complaint in Alamance County Superior Court against American Railing alleging breach of contract and negligence. On or about 11 January 2009, American Railing filed an answer and third party complaint against First Line alleging breach of contract and negligence. On or about 6 March 2009, First Line filed a motion to dismiss American Railing's third party complaint on the basis that the trial court lacked personal jurisdiction over First Line. On 14 September 2009, the trial court heard arguments on the motion. On 17 September 2009, the trial court filed an order denying First Line's motion to dismiss. First Line timely appealed to this Court.

## Interlocutory Nature of Appeal

[1] "Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999). "As a general rule, interlocutory orders are not immediately appealable." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009). However, First Line properly proceeds pursuant to N.C. Gen. Stat. § 1-277(b) (2009), which provides a right of immediate appeal where there has been "an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ." Accordingly, we will address the merits of this interlocutory appeal.

## Discussion

[2] The sole issue on appeal is whether the trial court has personal jurisdiction over First Line. We hold that it does not and that the motion to dismiss was, therefore, improperly denied.

Generally, " '[w]hen this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.' " *Eaker v. Gower*, 189 N.C. App. 770, 773, 659 S.E.2d 29, 32 (2008) (quoting *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005)). The trial court in this case did not make findings of fact in its order. "[A]bsent a request by the parties . . . the trial court is not required to find the facts upon which its ruling is based." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 258, 625 S.E.2d 894, 898 (2006). " 'In such case, it will be presumed that the judge, upon proper evidence, found facts sufficient to support his judgment.' " *City of*

*Salisbury v. Kirk Realty Co., Inc.*, 48 N.C. App. 427, 429, 268 S.E.2d 873, 875 (1980) (quoting *Haiduven v. Cooper*, 23 N.C. App. 67, 69, 208 S.E.2d 223, 225 (1974)). "Therefore, we must review the record to determine whether it contains competent evidence to support the trial court's presumed findings to support its ruling that Defendant[] w[as] subject to personal jurisdiction in the courts of this state." *A.R. Haire*, 176 N.C. App. at 258-59, 625 S.E.2d at 898.

> A two-step analysis applies when determining whether a court may exercise in personam jurisdiction over a non-resident defendant. First, is there statutory authority that confers jurisdiction on the court? This is determined by looking at North Carolina's "long arm" statute, section 1-75.4 of the North Carolina General Statutes. Second, if statutory authority confers in personam jurisdiction over the defendant, does the exercise of in personam jurisdiction violate the defendant's due process rights?

*Id.* at 259, 625 S.E.2d at 898-99.

First Line does not argue that the long arm statute does not confer personal jurisdiction over it. Consequently, we will not discuss the application of the statute to these facts. Our analysis is therefore limited to determining whether hailing First Line into a North Carolina court violates First Line's right to due process.

> To satisfy the requirements of the due process clause, there must exist certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. In determining minimum contacts, the court looks at several factors, including: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties. These factors are not to be applied mechanically; rather, the court must weigh the factors and determine what is fair and reasonable to both parties. No single factor controls; rather, all factors must be weighed in light of fundamental fairness and the circumstances of the case.

*Id.* at 259-60, 625 S.E.2d at 899 (internal citations and quotation marks omitted). Upon review of the record, we hold that First Line did not possess sufficient minimum contacts within North Carolina.

North Carolina has long had a policy favoring the compromise of disputes without resort to litigation. *See, e.g., Moore v. Greene,* 237 N.C. 614, 616, 75 S.E.2d 649, 650 (1953) ("The policy of the law favors the settlement of business disputes."); *see also Olive v. Williams,* 42 N.C. App. 380, 389, 257 S.E.2d 90, 96-97 (1979) ("[C]ontingency fee contracts providing against compromise or settlement of a case without the attorney's consent often have been declared as void against public policy for inhibiting compromise or settlement."). The "sound public policy encouraging the settlement of disputes out of court" has led to the rule excluding the admission of evidence of such compromises, *Rowe v. Rowe,* 305 N.C. 177, 186, 287 S.E.2d 840, 846 (1982), because "[i]f every offer to buy peace could be used as evidence against [the party] who presents it, many settlements would be prevented, and unnecessary litigation would be produced and prolonged." *Moffitt-West Drug Co. v. Byrd,* 92 F. 290, 292 (8th Cir. Indian Terr. 1899); accord, *Hammond Packing Co. v. Dickey,* 183 F. 977, 978 (8th Cir. 1911). Likewise, if every offer to compromise and promote peace is used as a contact to establish personal jurisdiction in this State over the party who presents it, "many settlements would be prevented, and unnecessary litigation would be produced and prolonged." *Hammond Packing Co.,* 183 F. at 978.

The record in this case indicates that First Line had no contact with North Carolina prior to Brocious's email to Smith Metals informing its representatives of First Line's intention to "assess the situation and fix the problem ASAP." First Line's emails and fax transmissions to Smith Metals detail First Line's efforts to remedy the problem with the railings. First Line also issued two checks to Smith Metals, sent emails indicating First Line's desire to reimburse Smith Metals for the railings, and sent an email requesting "18 to 20 months" to pay Smith Metals back.

None of these activities indicate that First Line "purposefully avail[ed]" itself of the "benefits and protections" of the laws of North Carolina sufficient to establish personal jurisdiction over it. *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958). Instead, these activities establish that First Line's sole purpose for these contacts was to attempt to resolve the problem without resort to litigation. It would "offend 'traditional notions of fair play and sub-

stantial justice[,]' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945), to penalize First Line for becoming "intricately involved in the resolution of the problem" by allowing our courts to obtain personal jurisdiction over First Line solely on the basis of First Line's sincere attempts to remedy the situation without resort to litigation. *See CEM Corp. v. Pers. Chemistry*, 55 Fed. Appx. 621, 625-26 (4th Cir. 2003) ("It would be very odd to permit a plaintiff to obtain personal jurisdiction over a defendant on the basis of the defendant's attempts to settle litigation begun by the plaintiff on the defendant's home turf . . . .").

In *Conwed Corp. v. Nortene, S.A.*, 404 F. Supp. 497, 504 (D.C. Minn. 1975), a case relied upon by First Line, the federal district court held that the state of Minnesota did not have personal jurisdiction over the defendant company because the defendant made contact with the plaintiff only after a complaint was filed in an attempt to settle the lawsuit. American Railing argues that in the present case, First Line made contact with Smith Metals *before* a complaint was filed. We find that to be a distinction without a difference. Based on this State's sound public policy of encouraging settlement, in determining whether minimum contacts exist, we discern no meaningful distinction between offers to correct a problem pursuant to cooperative negotiations before the filing of a complaint and offers to settle once a lawsuit has begun. In sum, because First Line had no contact with Smith Metals until First Line attempted to correct a defect in its product—a product which was manufactured in Pennsylvania at the request of American Railing, a Pennsylvania corporation—we are compelled to hold that the courts of North Carolina do not have personal jurisdiction over First Line.

### Conclusion

Based on the foregoing discussion, we hold that the trial court erroneously denied First Line's motion to dismiss pursuant to Rule 12(b)(2), and, consequently, we reverse and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Reverse and Remand.

Judges GEER and STEPHENS concur.